UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RESIDENTS OF GORDON PLAZA, INC., ) | CIVIL ACTION NO. 18-4226 |
| *Plaintiff*, ) | SECTION "B" (3) |
| v. ) | JUDGE IVAN L. R. LEMELLE |
| LATOYA CANTRELL, ET AL. ) | MAGISTRATE DANIEL KNOWLES, III |
| *Defendants*. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF FIRST MOTION
FOR PARTIAL SUMMARY JUDGMENT ON THE CITY'S SECOND DEFENSE**

Plaintiff Residents of Gordon Plaza Inc. ("the Residents") respectfully submits this Reply in Support of its First Motion for Partial Summary Judgment that the City's Second Defense has no basis in law (ECF No. 19).

**INTRODUCTION**

The Residents' opening memorandum (ECF No. 19-1) shows conclusively that binding Fifth Circuit precedent precludes the City's Second Defense, which asserts that RCRA "does not apply" because "operation of the Agriculture Street Landfill ceased prior to [its] enactment." Answer 1, Second Defense, ECF No. 13. The Fifth Circuit has determined that RCRA's "imminent hazard" provision is retroactive and clearly rejected the legal argument embodied by the City's Second Defense. *Cox v. City of Dallas*, 256 F.3d 281, 298 (5th Cir. 2001).[1]

Rather than withdrawing its Second Defense, the City raises a factual issue as to the merits—whether the toxic waste in the landfill "may present an imminent and substantial endangerment" as per 42 U.S.C. § 6972(a)(1)(B). Specifically, the City argues that "there is a

---

[1] The *Cox* opinion stated, "The [City of Dallas'] primary argument is that because its use ended in 1972 and because the RCRA was not enacted until 1976, it cannot be held liable under § 6972(a)(1)(B). We do not agree."

genuine issue of fact as to whether the site presents any imminent danger." Mem. Opp'n Pls.' Mot. Partial Summ. J. ("City Opp'n") 2, ECF No. 25. The dispute that the City identifies is not relevant to the City's Second Defense and thus is not relevant to the Motion for Partial Summary Judgment before this Court. The Fifth Circuit has ruled, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *See Lewis v. Sec'y of Pub. Safety and Corr.*, 870 F.3d 365, 369 n.10 (5th Cir. 2017).

The City also notes that it has asserted other defenses, specifically its Third and Fourth Defenses. But the Residents have not yet moved for summary judgment on those defenses and they are not relevant to the City's spurious Second Defense. None of the City's arguments, therefore, are relevant to the Resident's Motion. Nonetheless, the residents will address those arguments below so that the City's various assertions—as irrelevant as they are in the context of the Residents' First Motion for Partial Summary Judgment—do not go unrebutted.

## ARGUMENT

**I. The City's assertion of a dispute as to whether toxic waste at the landfill presents a potential endangerment is relevant to the merits—not to the City's Second Defense, which concerns RCRA's scope.**

The City claims that the Residents' lawsuit will fail because "the site does not present an imminent and substantial endangerment."[2] City Opp'n 8. That argument has nothing to do with the jurisdictional argument that the City advanced in its Second Defense. Jurisdiction "is not defeated as respondents seem to contend, by the possibility that the averments might fail to state

---

[2] The City consistently drops the word "may" from the statutory grant of equitable jurisdiction to this Court to abate waste-related situations "which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

2

a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

   II. **The EPA "Five Year Review" report that the City relies on does not establish the lack of a potential endangerment.**

EPA's decision not to take further action under the Superfund law (the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq.) does not eliminate the potential for endangerment to people living on the City's former dump. To the contrary: "hazardous substances, pollutants, or contaminants remain at the site above levels that allow for unlimited use and unrestricted exposure." Fourth Five-Year Review Report for Agriculture Street Landfill Superfund Site, U.S. EPA (July 2018) ("EPA Report") 4, ECF No. 30-1 at 15. Thus, the City and EPA expect the landfill's residents—having been duped into buying contaminated property[3]—to take responsibility for operation and maintenance activities "required to maintain the protectiveness of the remedy." EPA Report 8, ECF No. 30-1 at 19. EPA explains,

> These maintenance activities are the responsibility of each property owner. Post-closure care of the clean soil/geotextile and vegetative cover consists of routine activities to maintain the integrity of the surface soil and vegetation on each property. Surface maintenance includes filling holes above the geotextile barrier with clean soil and continued cultivation of vegetation to ensure a healthy cover over the clean fill. In the event that excavation below the geotextile barrier is required, EPA provided property owners with procedures for excavation of soil from below the barrier and restoration of the geotextile barrier (EPA 2003).

*Id*. At nine residential properties, EPA requires a warning to the public "that soil on these properties may contain contaminant levels that are unacceptable for non-industrial use . . . ." *Id*.

---

[3] Despite the City's knowledge that the Gordon Plaza development was built on a City dump, "[t]he Gordon Plaza home buyers were not told that their homes were located on what had once been a part of the City's landfill." *Johnson v. Orleans Par. Sch. Bd.*, 2006-1223 (La. App. 4 Cir. 1/30/08), 975 So. 2d 698, 703.

3

EPA expects that residents will be denied free use of their property, relying on a City ordinance under which "owners or lessees of land within ASL [Agriculture Street Landfill] site who seek to excavate soil over 18" to provide notice to the City." *Id*. EPA does not explain how to guarantee that children will not dig, or enter those yards that EPA deems "unacceptable for non-industrial use." *Id.* Nor does EPA explain how it expects elderly or ill residents to engage in "routine activities to maintain the integrity of the surface soil and vegetation on each property" including "filling holes above the geotextile barrier with clean soil and continued cultivation of vegetation." *Id.*

EPA also assumes that Louisiana utility companies will comply with "instructions for utility repair excavations, which will ensure the continued integrity of the permeable barrier on those properties where it was installed" consistent with an EPA "field demonstration of excavation and backfill procedures for utility companies" conducted "on December 1, 1999." *Id*. at 7, ECF No. 30-1 at 18. Anyone familiar with utility practices in New Orleans would question EPA's assumption that this approach will effectively protect residents. In addition, as a direct result of contamination at the landfill, the neighborhood continues to be burdened with blighted, vandalized structures and illegal dumping (see photographs at ECF No. 30-1, pp. 223, 224, 226, 227. This provides a breeding ground for vermin and crime—an endangerment caused by the City's toxic waste.

**III. Neither the City's Third nor Fourth Defense can salvage the City's Second Defense.**

The City's Third Defense questions the Residents' "standing to sue" under Article III of the U.S. Constitution. This is not an issue raised by the City's Second Defense. Briefly, an organization such as the Residents has standing to sue on behalf of its members when at least one member "would otherwise have standing to sue in their own right, the interests at stake are

4

germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 181 (2000). Individual members have standing when (1) threatened with "injury in fact" that is (2) "fairly traceable to the challenged action," and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 180-81.

Here, because contamination risks inarguably deny the residents free use of their property, *see* EPA Report 7-9, ECF No. 30-1 at 17-19 (discussed above), residents have suffered an injury traceable to the City's toxic waste.[4] And this Court has authority to order the relief sought (a declaration, relocation consistent with the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 et. seq.[5], and/or such other relief such the Court deems proper) without participation of individual members, since the Court may order such "action as may be necessary" to abate the potential for endangerment at the landfill. 42 U.S.C. § 6972(a).[6]

---

[4] A description of the residents' situation is available at Richard A. Webster, *The Poisoned Promises of Agriculture Street*, NOLA.com (April 22, 2015), available at http://www.nola.com/politics/index.ssf/2015/04/agriculture_street_landfill_ne.html.

[5] Because the Uniform Relocation Assistance Act and its implementing regulations (49 C.F.R. pt. 24) provide a methodology for post-judgment relocation of individual households, there is no need for pre-judgment participation of individual residents in this lawsuit. The Middle District of Louisiana took a similar approach in a consent decree relocating residents away from a sewage treatment plant. *Louisiana Environmental Action Network v. City of Baton Rouge*, No. 10-cv-187 (M.D. La. Consent Decree entered Mar. 19, 2014) (ECF No. 47) ¶¶ 11-13 (available on Pacer and at http://www.tulane.edu/~telc/assets/Settlements/3-19-13_ConsntDecree-BR_Sewer.pdf).

[6] This provision of RCRA "is intended to confer upon the courts the authority to grant affirmative equitable relief to eliminate **any risks** posed by toxic wastes." *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 399 F.3d 248, 267 (3d Cir. 2005) (internal quotation marks and citations omitted; emphasis added), *cert. denied*, 545 U.S. 1129 (2005). This Court has equitable authority to abate any situation that poses "a reasonable prospect of future harm … so long as the threat is near-term and involves potentially serious harm." *See Maine People's All. and Nat. Res.*

The City's Fourth Defense asserts that 42 U.S.C. § 6972(b)(2)(B)(iv) bars this lawsuit because EPA signed a consent decree with the City, pursuant to which the City supposedly is "diligently …. proceeding with a remedial action." Diligence is, of course, a question of fact. The City's minimal responsibilities under the EPA consent decree include maintaining vegetation and fencing. EPA Report, Appendix D (Consent Decree) at ¶ 5(a)-(b), ECF No. 30-1 at 68-69. Yet EPA noted that "during the site inspection, heavily overgrown vegetation and disrepair of the fencing at and around OU1 [operable unit 1] was observed." EPA Report 15, ECF No. 30-1 at 26. Although these facts may be relevant to the City's Fourth Defense, however, they have nothing to do with the Second Defense.

The City clearly is not engaged in ongoing remedial action because EPA decided more than fifteen years ago (in 2002), that the "selected remedy at the ASL [Agriculture Street Landfill] site was No Further Action." EPA Report 7, ECF No. 30-1 at 18. EPA explains that since it completed its "removal actions" more than fifteen years ago, "No remedial action has been performed." *Id*. Analogously, the Fifth Circuit determined in *Louisiana Environmental Action Network v. City of Baton Rouge* that a consent decree between the Defendants and the United States and the State of Louisiana could not moot a Clean Water Act citizen suit that alleged ongoing noncompliance eight years after entry of the decree. *Louisiana Environmental Action Network v. City of Baton Rouge*, 677 F.3d 737, 745 (5th Cir. 2012).

The City does not argue that it is taking action, diligent or otherwise, to abate risks from the ongoing blight that results directly from contamination at the landfill. Instead the City and EPA wish to preserve these blighted structures' foundations because "concrete foundations serve

---

*Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 296 (1st Cir. 2006), *cert denied*, 552 U.S. 816 (2007).

as a protective barrier from any possible waste that might exist in the subsurface soils." EPA Report 11, ECF No. 30-1 at 22. Regardless of whether blighted structures ultimately are demolished, therefore, "foundations would remain in place to serve as a barrier from subsurface waste," *id*. at E-3, ECF No. 30-1 at 7. This, of course, reduces any slim chance that the Agriculture Street Landfill could ever be redeveloped into a viable community. EPA's response to residents' "various health concerns that were felt to be due to living on a Superfund site" was curt: "EPA notified its Agency for Toxic Substances and Disease Registry (ATSDR) counterpart of this concern and requested a follow-up. No additional information has. been provided at this time." *Id*. at 11, ECF No. 30-1 at 22. Contamination above EPA screening levels continues to be found in residential soils at the site. *Id*. at 14, ECF No. 30-1 at 25.

## CONCLUSION

For all the foregoing reasons, this Court should grant Plaintiff's Motion for Partial Summary Judgment that Defendants' Second Defense has no basis in law and must be dismissed.

Respectfully submitted on December 18, 2018,

**TULANE ENVIRONMENTAL LAW CLINIC**

s/ Lisa Jordan
LISA W. JORDAN (#20451)
Director, Tulane Environmental Law Clinic
6329 Freret Street, Suite 130
New Orleans, LA 70118
Phone: (504) 865-5789
Email: lwjordan@tulane.edu

s/ Adam Babich
ADAM BABICH (#27177)
6329 Freret Street
New Orleans, LA 70118
Phone: (504) 862-8800
Email: ababich@tulane.edu

*Counsel for Plaintiff, Residents of Gordon Plaza, Inc.*