**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**RESIDENTS OF GORDON PLAZA, INC.**　　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　　　　　**NO. 18-4226**

**LATOYA CANTRELL, ET AL.**　　　　　　　　　　　**SECTION "B"(3)**

<u>**ORDER AND REASONS**</u>

　　Defendants Mayor LaToya Cantrell and the City of New Orleans filed the instant motion for judgment on the pleadings, or in the alternative for summary judgment.[1] Rec. Doc. 36. Plaintiff timely filed a response in opposition. Rec. Doc. 44. Defendants sought, and were granted, leave to file a reply. Rec. Doc. 56. Plaintiff filed a motion for partial summary judgment on standing. Rec. Doc. 42. Defendants timely filed a response in opposition. Rec. Doc. 45. Plaintiff sought, and was granted, leave to file a reply. Rec. Doc. 53. For the reasons discussed below,

　　**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** relative to the associational standing issue and plaintiff's claims are **DISMISSED;**

　　**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment on standing is **DENIED;** and

　　**IT IS FURTHER ORDERED** that defendants' motion to compel discovery responses (Rec. Doc. 62) and motion to file corrected

---

[1] Because the parties present documents outside of the pleadings, and this Court relies on information from these documents in making its decision, defendants' motion will be construed as a motion for summary judgment.

1

opposition (Rec. Doc. 66), and plaintiff's motion to determine that defendants' answers and objections are insufficient (Rec. Doc. 63) are **DISMISSED as moot**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed a citizen enforcement suit under the Resource Conservation and Recovery Act ("RCRA"), alleging that the Mayor and City of New Orleans ("the City") have imposed inhumane and dangerous living conditions on residents of Gordon Plaza. Rec. Doc. 2 at 1. Gordon Plaza is located on the former Agriculture Street Landfill ("Landfill") site, which the City of New Orleans operated as a dump from 1909-1957 and reopened for waste from Hurricane Betsy in 1965-66. Id. at 5. Plaintiff's claims are described in greater detail in a recent Order and Reasons and are incorporated by reference here. Rec. Doc. 48.

Defendants filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative for summary judgment, on the grounds that this Court lacks subject matter jurisdiction and plaintiff has failed to state a claim upon which relief can be granted. Rec. Doc. 36 at 1. Plaintiff timely filed a response in opposition, arguing that defendants' motion is meritless and asserting it has properly stated a claim upon which relief can be granted and that this Court does not lack subject-matter jurisdiction. Rec. Doc. 44.

Plaintiff subsequently filed a motion for partial summary judgment that plaintiff has associational standing and its members have individual standing to bring this suit. Rec. Doc. 42. Defendants timely filed a response in opposition, restating the argument they put forth in their motion that plaintiff lacks individual standing, and that plaintiff does not have associational standing to seek individualized relocation on behalf of alleged and unnamed members. Rec. Doc. 45.

## **LAW AND ANALYSIS**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). When the movant meets its

3

burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All reasonable inferences must be drawn in favor of the nonmovant, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

A. <u>Plaintiff does not have standing to bring suit on behalf of its members</u>

Plaintiff does not have standing to bring suit because the requested relief of relocation would require individualized participation. Under the doctrine of associational standing, Residents may have standing to bring suit on behalf of its members if:

> "[1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012). Defendants argue that it is impossible for plaintiff to meet the third prong of this test. In the complaint, plaintiff requests that the Court "order the Defendants to relocate the Plaintiff's

4

members into comparable housing. . ." Rec. Doc. 2 at 11. Defendants assert that relocating members from their current homes to a new residence necessarily requires their individual participation, voiding associational standing. Even assuming, without deciding, that plaintiff could meet the first two prongs for associational standing, the Court finds that plaintiff's requested relief of relocation would require the individual participation of its members. Plaintiff argues that it requests only injunctive relief and not damages, and "suits for injunctive relief . . . do not involve individualized proof of damages." Rec. Doc. 42-1 at 12 (citing *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F.Supp.2d 663 (E.D. La. 2010)). In the Supreme Court case cited by the District Court in *Concerned Citizens,* the Court stated that "individual participation is not *normally* necessary when an association seeks prospective or injunctive relief for its members. . ." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544 (1996) (emphasis added) (internal quotations omitted). It is true that a typical request for injunctive relief may not require individual members' participation because an injunction often requires the defendant to act or not act in some way, without requiring anything of the members. However, in this case plaintiff seeks the individual relocation of each of its 24 current members from their present homes in Gordon Plaza to comparable housing elsewhere. Rec. Doc.

5

44 at 19. Such an action cannot be completed without the members' participation. Therefore, while individual participation is not normally necessary for injunctive relief, the relocation relief requested in this case would require it. Therefore, plaintiff does not have associational standing.

Plaintiff also relies on a Clear Water Act consent decree issued by the Middle District of Louisiana. That decree involved a component for relocating residents away from a sewage treatment plant. Rec. Doc. 42-1 at 13. However, that consent decree voluntarily submitted by parties who willingly agreed to undertake a relocation remedy is not comparable to the present case in which plaintiff's associational standing is contested and found lacking. Rec. Doc. 45 at 11.

B. <u>The consent decree between the City and the EPA</u>

Defendants assert that the consent decree between themselves and the EPA bars this type of lawsuit because RCRA prohibits citizen suits brought under 42 U.S.C. 6972(a)(1)(B) when the EPA is also acting to address the conditions contributing to the alleged endangerment as identified by the statute. Rec. Doc. 36-3. On the other hand, plaintiff argues the Consent Decree does not bar suit because the Consent Decree does not purport to release the City from RCRA liability, and the City is not proceeding with remedial action.

6

The parties quote RCRA as stating that citizens suits are barred where the EPA Administrator has obtained a court order "pursuant to which a responsible party is diligently conducting a ***remedial action***, Remedial Action Investigation and Feasibility Study (RIFS), or proceeding with a remedial action." Rec. Doc. 36-1 at 13; Rec. Doc. 44 at 14 (emphasis added). The RCRA actually states that:

> "(B) No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—
>
> . . .
>
> (iv) has obtained a court order (including a consent decree) . . . pursuant to which a responsible party is diligently conducting a ***removal action***, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action."

42 U.S.C. 6972(B)(iv) (emphasis added).

The text of RCRA prohibits a citizen suit to be brought against a defendant where the defendant is conducting a removal action *or* a remedial action pursuant to a consent decree obtained by the EPA. Plaintiff points out the EPA report states that "no remedial action was performed". Removal actions are distinct from remedial actions in that they may mitigate or stabilize the threat rather than comprehensively address all threats at a site.

The question before the Court is whether defendants are conducting an action to mitigate or stabilize the threat pursuant

7

to the Consent Decree. The Consent Decree requires defendants to: "maintain and repair the security fence," "maintain a stable vegetative cover," provide a technical abstract to utilities operating within the Landfill site, join and maintain membership in the LAOne Call program and designate an office within the City as a point of contact, direct City agencies to incorporate the Technical Abstract as standard operating procedure, ensure that the Sewerage and Water Board includes the protocol for maintenance in bills, designate a disposal facility for soils removed from beneath the geotextile mat, and designate a project coordinator to ensure the City's compliance. Rec. Doc. 36-3 at 8-10. Those actions are not removal actions as they do not task the City with mitigating or stabilizing a threat. Rather, the City has been ordered to meet certain compliance requirements to maintain the removal actions that were previously completed by the EPA. A number of these requirements were to be completed within 60 days of the entry of the Decree in 2008, including providing utilities with the Technical Abstract, joining the LAOne Call program and designating an office within the City as a point of contact, designating a landfill facility for disposal of the excavated soils, and designating a project coordinator. Rec. Doc. 36-3 at 9. The remaining requirements that the City must continue to meet, such as maintaining and repairing the security fence and maintaining a stable vegetative cover, involve basic maintenance

of completed removal actions. Therefore, the City has not provided evidence that it is "diligently conducting a removal activity" as required to preclude a citizen suit. 42 U.S.C. § 6972(b)(2)(B)(iv).

Additionally, for purposes of determining whether a citizen suit is prohibited by section 6972(b)(2)(B)(iv), it is the defendants' actions pursuant to the Consent Decree that are relevant for the Court to consider, not the EPA's actions. As plaintiff points out, defendants do not rely on section 6972(b)(2)(B)(ii) in their motion, which prohibits citizen suits when the EPA itself is actually engaging in a removal action, and it is not relevant as neither party has alleged that the EPA is presently engaging in removal actions in the pleadings. Rec. Doc. 44 at 15.

Parties' arguments concerning whether the Consent Decree releases the City from abatement actions is not relevant to the Court's analysis here. Rec. Doc. 36-1 at 13, Rec. Doc. 44 at 12. The plain language of RCRA does not require the Consent Decree to include such a release from liability in order for a citizen suit to be barred. Rather, the existence of a court order or consent decree pursuant to which defendants are conducting removal or remedial work would have been sufficient to preclude a citizen suit.

New Orleans, Louisiana this 24th day of May 2019

_____
SENIOR UNITED STATES DISTRICT JUDGE